CROWE v. LIQUID CARBONIC CO.

(Supreme Court, Appellate Division, Third Department.   December 30, 1912.)

1. SALES (§ 481*)—CONDITIONAL SALES—RETAKING AND SALE—LIABILITY OF SELLER.

Under Personal Property Law (Laws 1909, c. 45 [Consol. Laws 1909, c. 41]) § 65, providing that where property is retaken by the seller under a contract of conditional sale, and is not sold by him at public auction within 30 days after the 30 days he is required to retain possession, he is liable for the return of payments made by the buyer, a seller who took control of a soda fountain under a contract of conditional sale, and rented same and appropriated the rent without crediting it on the contract, became liable to repay the installments paid by the buyer, though the contract purported to waive the statutory provision; an executory contract waiving such statutory provision being contrary to public policy, and void.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1449–1455; Dec. Dig. § 481.*]

2. APPEAL AND ERROR (§ 1175*)—REVERSAL—RENDERING FINAL JUDGMENT.

Where, on appeal from a judgment against plaintiff in an action to recover payments made, plaintiff is held entitled to recover the payments, and the findings of fact show, without dispute, the amount of the payments, the judgment will be reversed and final judgment rendered without new trial, under authority of Code Civ. Proc. § 1317, as amended by Laws 1912, c. 380, authorizing rendition of judgment without a new trial when a new trial is unnecessary.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Houghton and Lyon, JJ., dissenting.

Appeal from Trial Term, Broome County.

Action by George J. H. Crowe, as trustee, against the Liquid Carbonic Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed upon the law and facts.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

H. J. Hennessey, of Binghamton, for appellant.
T. B. & L. M. Merchant, of Binghamton, for respondent.

JOHN M. KELLOGG, J.   May 7, 1909, Pappas & Karahall purchased of the defendant, under a contract of conditional sale, a soda fountain and apparatus for $1,885, $400 of which was paid by the delivery of an old fountain, $225 in cash, and the balance was represented by 36 promissory notes of $35 each, with interest, dated May 7, 1909, one note payable each month thereafter.   On the 21st day of January, 1910, the said firm and its members were declared bankrupts, and thereafter the plaintiff was duly appointed trustee in bankruptcy. The notes which had become due up to that time had been paid. Those subsequently maturing were not paid.   The fountain was in the store carried on by said bankrupts.   One Beaumann, under a chattel mortgage, acquired title to the goods and fixtures in the store aside from the fountain, and continued the business in the same store. The fountain and apparatus were inventoried by the plaintiff in the schedules in bankruptcy as held under a conditional sale contract, but remained in the store.   On February 3, 1910, the defendant leased the fountain in the store to Beaumann, the occupant of the store, for the month of February at $15, and like monthly leases were made for March, April, and May.   The rental was duly paid, but was not indorsed by the defendant upon the contract of sale.   In June the defendant removed the fountain and apparatus from the store, and claimed to have retaken it then, and after 30 days caused notice of sale to be given, and the fountain was subsequently sold, apparently according to the provision of the law relating to conditional sales.

There was no note in arrear on the day of the leasing, but one became due a very few days after, and when each subsequent lease was made, there were notes in default.

[1] Section 65 of the Personal Property Law (chapter 45, Laws of 1909 [Consol. Laws 1909, c. 41]) provides that, where property is retaken by the vendor under a contract of conditional sale, it shall be retained by him for 30 days from such retaking in order to enable the vendee to comply with the contract, and, if the default continues, the vendor must within 30 days thereafter sell the articles at public auction, and, "unless such articles are so sold within thirty days after the expiration of such period, the vendee or his successor in interest may recover of the vendor the amount paid on such articles by such vendee or his successor in interest under the contract for the conditional sale thereof."   The plaintiff seeks to recover the installments paid upon the contract, but by the judgment appealed from he is denied relief.

The defendant had no right to lease the fountain to Beaumann unless he claimed that right under the contract of conditional sale, and it was proceeding upon the theory that default had been made or was about to be made.   After default the plaintiff could not object to the defendant's retaking or renting the property, as it was its right under the contract.   That the defendant considered it was leasing the fountain for its own benefit, and not for the benefit of the plaintiff, is

evident by its appropriating the rent, and not crediting it on the contract. It took control of the fountain and retained it for four months, and its attempt thereafter to comply with the statute was too late. It had incurred the liability to repay the installments paid upon retaining the property after thirty days without taking any steps for selling it. The contract purported to waive this provision of the statute as to retaining the property for thirty days after retaking it and selling it for the vendee's benefit, but provided that upon such retaking the vendee's right to comply with the terms of the contract and thereupon receive said property is expressly waived. This statute was passed pursuant to a wise public policy. It was known that property was frequently sold upon conditional sales, and, after the vendee had nearly paid for it, the vendor would seize and resell it, and the vendee would lose the property and the payments as well. The Legislature evidently realized that the persons making this class of contracts were at a disadvantage, and were not entirely in a position to adequately take care of themselves by exacting favorable terms for such a contract, and therefore the law provided what should be the effect of such a contract and in what manner and how the vendor might retake and sell the property. If by an executory contract the provisions of the statute may be waived in advance, it practically nullifies the statute because a waiver will always be found. The authorities indicate that such a waiver by executory agreement in advance of default and at the time of making the contract is against public policy and ineffectual, and we so hold. Roach v. Curtis, 115 App. Div. 765, 101 N. Y. Supp. 333; s. c., 191 N. Y. 388, 84 N. E. 283; Hurley v. Allman Gas Engine & Machine Co., 144 App. Div. 300, 129 N. Y. Supp. 14. The defendant did not retake and sell the property in the manner required in the case of a conditional sale, and the attempted waiver of the provisions of the statute in that respect is without effect.

[2] Under section 1317 of the Code of Civil Procedure as amended in 1912 (Laws 1912, c. 380), this court may "render judgment of affirmance, judgment of reversal and final judgment upon the right of any or all of the parties, or judgment of modification thereon, according to law, except where it may be necessary or proper to grant a new trial or hearing, when it may grant a new trial or hearing." The evidence shows that this plaintiff is entitled to recover the payments actually made. The eighth and ninth findings of fact show upon undisputed evidence the payments made. There is therefore no necessity for a new trial. The judgment should therefore be reversed upon the law and the facts. The fourteenth and fifteenth findings of fact are disapproved of as without evidence, and a final judgment directed for the plaintiff for the payments made on said contract as shown by the eighth and ninth findings of fact, with interest thereon from April 12, 1912, with costs to the plaintiff in the court below and upon this appeal.

All concur, except HOUGHTON and LYON, JJ., dissenting.

HOUGHTON, J. (dissenting). I am unwilling to find as a fact in opposition to the finding of the trial court that the defendant actually

repossessed itself of the soda water fountain sold to Pappas & Karahall under conditional contract of sale prior to the 1st day of June, 1910.

The purchasers became bankrupt. A considerable part of their property was subject to a large chattel mortgage. The soda water fountain, however, was not included. The receiver in bankruptcy took possession of all the property of Pappas & Karahall not covered by the chattel mortgage. Such receiver, therefore, took possession so far as the law would permit of the interest of the bankrupts in the fountain which they were under contract to buy. A sale under the chattel mortgage was attempted, and the bankruptcy court issued a restraining order, and the sale was not actually had until February, 1911, more than seven months after June 1, 1910. Although it does not appear that there was any restraining order with respect to the soda water fountain, still there was controversy over the chattel mortgage, over the lease, and the fountain was practically in the custody of the bankruptcy court. Both the receiver and the trustee say that they took possession of the fountain and that they never voluntarily surrendered it, and it was never actually removed until June 1, 1910; and concededly after its removal the defendant complied with all the requirements of the Personal Property Law with respect to holding and sale at public auction.

The sole circumstance against all these facts from which it can be adduced that the defendant did take possession of the fountain prior to the 1st day of June is that the defendant leased the fountain from month to month to the chattel mortgagee who had purchased the perishable stock of the bankrupts and was conducting the store which they formerly occupied.

The letters of instruction of the defendant to its attorneys and their acts I do not think conclusively show that there was any intention of actually taking possession of the fountain by virtue of the right which the defendant had under its contract of conditional sale. It is true the defendant's attorneys kept the money received for the rental; but, if the defendant did not take possession of the fountain, the money belongs to the bankrupts or their trustee, and the fact that the defendant or its attorneys have possession of it does not conclusively establish that the defendant repossessed itself of the fountain by virtue of its contract.

But even if it be assumed that the defendant did retake the fountain as early as February, 1910, and therefore did not comply with the requirements of the Personal Property Law with respect to holding it 30 days and reselling within the succeeding 30 days, still I am of opinion that the purchasers had a right to waive the requirements of the statute, and that their agreement so to do is not against public policy, and therefore ineffectual.

The contract of purchase contained a clear and explicit waiver of the requirements of the statute, and reads as follows:

"And we (purchasers) hereby agree that it shall not be necessary for you (defendant seller) to retain said property for a period of thirty days after retaking, or to sell the same for our benefit; but upon such retaking our

right to comply with the terms of this contract and thereupon to receive said property is expressly waived."

If the requirements of the statute with respect to the retaking of property sold by conditional sale and the retaining of it for 30 days and the selling of it for the benefit of the buyer within the succeeding 30 days can be waived at all, the language quoted would clearly seem to constitute such a waiver. The object of the statute in requiring the retaining of the property for 30 days after retaking is to give the buyer an opportunity to redeem under his contract and complete his purchase, and the requiring a sale at public auction within the next succeeding 30 days is to ascertain if a surplus may not be obtained over the amount due and expenses incurred which can be repaid to the buyer. Of course, a buyer of personal property under a conditional contract of purchase can agree to waive and forego all such privileges unless it is against public policy to permit him so to do. A man with full understanding may deliberately contract to waive, and may waive, rights which the common law or the statute law or even the Constitution itself accords to him, unless for some reason it is against the common good to allow him to do so. The statute was enacted primarily to protect persons of small means who were compelled to purchase household goods and necessities on the installment plan, and to prevent the seller from retaking the property after a large proportion of the installments had been paid without any accounting therefor, and simply because the contract had been broken. This practice tended to impoverish citizens, and to make paupers and public dependents of industrious and striving householders and families. It has long been the law that one having a family to provide for was entitled to certain exemptions against execution. The object of such exemptions was to prevent pauperism and destitution, and it was therefore held by the courts that it was against public policy for a householder prospectively to contract to waive such exemption. Kneettle v. Newcomb, 22 N. Y. 249, 78 Am. Dec. 186. The provisions of the Personal Property Law with respect to conditional sales had in view the same salutary purpose as the exemption law, and with respect to all exempt property, and possibly as to all useful and necessary household goods, I am willing to concede that a buyer should not be permitted by contract to waive the provisions of the statute. I can see no reason, however, for extending the prohibition to ordinary articles of commerce and of trade. No considerations of public policy are involved in contracts made by a merchant with respect to his business affairs. A druggist or a candy maker can install a soda water fountain in connection with his business if he chooses, or he can run his establishment without it. If he sees fit, without any advantage being taken of him, to make a bargain to purchase a soda water fountain on the installment plan, I fail to see any consideration of public policy which should prevent him from agreeing that, if he fails to pay all the installments, the seller may retake the property, and claim it as his own without selling it at public auction, and accounting to him for the proceeds. Because the statute may require the intervention of public policy as to the purchase of

some articles, it does not necessarily follow that public policy applies to all articles purchased by conditional contract of sale.

Roach v. Curtis, 191 N. Y. 387, 84 N. E. 283, is not a conclusive authority requiring a holding that the contract under consideration was against public policy. The goods purchased in that case were articles of household furniture, and there was a waiver only of the sale at public auction. While it is strongly intimated that an agreement to waive the requirements of the statute in the conditional purchase of household furniture would be against public policy, and therefore void, it is not so expressly held, the decision turning upon the point that the waiver was not broad enough to include all provisions of the statute but related only to the manner of sale on default.

The same may be said of the decision in Hurley v. Allman Gas Engine & Machine Co., 144 App. Div. 300, 129 N. Y. Supp. 14, which ultimately turned upon the proposition that the agreement of waiver was not broad enough to include a waiver of sale.

In the present case the requirements of retaining the property for a period of 30 days after retaking and of selling for the benefit of the buyer are both expressly waived, as well as the right to retain all installments paid for the use of the property while the vendees had possession.

It seems to me that there is no ground for saying that the agreement which the parties entered into for the purchase of the soda water fountain respecting the waiver of the provisions of the statute was against public policy, and I therefore vote for an affirmance of the judgment.